**FILED**

DEC 1 1 2007 *aew*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

AO 243
REV 6/82

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District NORTHERN DISTRICT OF ILLINOIS | |
|---|---|---|
| Name of Movant ALFONZO INGRAM | Prisoner No. | Docket No. 02: CR-688-2 |

Place of Confinement
Federal Correctional Institution, POB 9000, Seagoville, TX 75159-9000.

(include name upon which convicted)

UNITED STATES OF AMERICA    V.    ALFONZO INGRAM

(full name of movant)

### MOTION

1. Name and location of court which entered the judgment of conviction under attack UNITED STATES DISTRICT

   FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2. Date of judgment of conviction __June 16, 2004__

3. Length of sentence Three Hundred Months Imprisonment

4. Nature of offense involved (all counts) __Conspiracy to Possess With Intent to Distribute Cocaine;__

   Attempted Possession With Intent to Distribute Cocaine.

**07CV6955
JUDGE BUCKLO
MAG. JUDGE DENLOW**

5. What was your plea? (Check one)
   - (a) Not guilty ☒
   - (b) Guilty ☐
   - (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   __N/A__

6. Kind of trial: (Check one)
   - (a) Jury ☒
   - (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 243
REV 6/82

9. If you did appeal, answer the following:

(a) Name of court United States Court Of Appeals for the 7th Circuit

(b) Result Affirmed

(c) Date of result

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court United States Supreme Court

(2) Nature of proceeding Writ of Certiorari

(3) Grounds raised

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result

(6) Date of result

(b) As to any second petition, application or motion give the same information:

(1) Name of court N/A

(2) Nature of proceeding

(3) Grounds raised

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____N/A_____

(6) Date of result _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court _____N/A_____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result _____

(6) Date of Result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc.    Yes ☐ No ☐
(2) Second petition, etc.   Yes ☐ No ☐         N/A
(3) Third petition, etc.    Yes ☐ No ☐

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____N/A_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243
REV 6/82

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: __WHETHER THERE WAS A CONSTRUCTIVE AMENDMENT OF THE INDICTMENT__

__IN VIOLATION OF INGRAM'S FIFTH AMENDMENT RIGHT TO GRAND JURY CLAUSE__

Supporting FACTS (tell your story *briefly* without citing cases or law: _____

    (See Attached Memorandum in support and points of law made a part

    of this 28 U.S.C. § 2255 Motion.)

_____

_____

_____

B. Ground two: __INGRAM WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS__

__GUARANTEED HIM BY THE SIXTH AMENDMENT TO THE CONSTITUTION__

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

(See Attached Memorandum of Law made a part of this Motion)

_____

_____

_____

C. Ground three: _____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

AO 243
REV 6/82

D. Ground four: _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

Due to trial and Appellate counsel's ineffectiveness, all grounds presented here

have not previously presented. Further more, these grounds are proper under 28

U.S.C. § 2255 motion.

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing   Ms. Susan M. Pavlow, 53 W. Jackson BLVD., Suite 1460,

Chicago, Illinois 60604

(b) At arraignment and plea _____ Same as above

_____

(c) At trial _____ Same as above

_____

(d) At sentencing _____ Same as Above

_____

AO 243
REV 6/82

(e) On appeal    Steven J. Weinberg

          53 West Jackson BLVD., Suite 1460, Chicago, Illinois 60604

(f) In any post-conviction proceeding _____ N/A


(g) On appeal from any adverse ruling in a post-conviction proceeding _____

                              N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

   (a) If so, give name and location of court which imposed sentence to be served in the future: _____

          N/A


   (b) Give date and length of the above sentence: _____

          N/A

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☐ No ☐    N/A


Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.


                    _____
                         Signature of Attorney (if any)



I declare under penalty of perjury that the foregoing is true and correct. Executed on

December 6, 2007
        (date)

                    _____
                         Signature of Movant

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,
   Plaintiff-Respondent,

vs.

ALFONZO INGRAM
   Defendant-Movant.

         \*
         \*
         \*
         \* CIVIL NO. _____
         \* CRIM. DOCKET NO. 02:CR-688
         \*
         \*
         \*

## MEMORANDUM WITH POINTS OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE FOR A PERSON IN FEDERAL CUSTODY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

  **COMES NOW,** Movant, Alfonzo Ingram, hereinafter referred to as Movant or Ingram, and files this his pro se Memorandum with points of law in support of motion to Vacate, Set Aside or Correct Sentence for a Person in Federal Custody, respectfully showing this Honorable Court as follows:

### JURISDICTION

  This court's jurisdiction is evoked pursuant to Title 28 USC § 2255 and the rules applicable thereto, subject matter jurisdiction ensued under Title 21 USC § 846. Sentencing was imposed under authority of the Sentencing Reform Act of 1984, as promulgated by the Sentencing Commission pursuant to the United States Sentencing Guidelines and its attending amendments. Venue flows from Title 18 USC § 3231.

### STANDING TO RAISE CLAIM UNDER HABEAS CORPUS

  Pursuant to Title 28 USC § 3231, [A] prisoner claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution of the United States or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law , or is otherwise subject to collateral attack, may move the court which

-1-

imposed the sentence to vacate, set aside or correct the sentence. **28 USC § 2255;**
**See United States v. Higon,** 832 F.2d 312(5th Cir.)**Cert denied,** 484 U.S. 1215(1988).

As written, Title 28 USC §2255, provides a statutory means by which an
individual under federal sentence, can obtain federal Habeas Corpus review of
the sentence imposed. As has long been emphasized by the supreme court, congress
enacted § 2255 to provide in the sentencing court a remedy exactly commensurate
with that which had previously been available for habeas corpus in the court
of the district where the prisoner was confined. See **Hill v. United States,** 368
U.S. 424, 427 (1962).

Pursuant to Title 28 USC § 2255, individual sentenced by a federal court
may attack the sentence imposed by claiming one of four different grounds (1)
that the sentence was imposed in violation of the constitution or law of the
United States (2) that the court was without jurisdiction to impose such sentence
(3) that the sentence was in excess of the maximum authorized by law (4) that
the sentence is otherwise subject to collateral attack. See **Hill v. United States,**
**368 U.S. at** 426-27.

The enactment of the sentencing Reform Act of 1984 created a fundamental
change in the manner in which sentences are imposed and reviewed in federal courts.
Under the Act, judicial discretion in imposing sentences has been severely
circumscribed, and in its stead, a comprehensive set of guidelines dictate the
presumptive sentence that a given defendant should serve. Through introduction
of these guidelines, congress sought to replace the disparity that had typified
the discretionary sentencing system emphasizing uniformity, proportionality and
certainly of punishment. See **Misteretta v. United States,** 488 U.S. 361(1989).
However, in under **Blakeley v. Washington,**___U.S.___, 124 S. Ct. 2531 (2004) cum
**United States v. Booker,** 375 F.3d 508 (7th Cir. 2004), the sentencing guidelines
have been rendered advisory but short of reinstating discretionary system.

Proceedings pursuant to § 2255 are akin to an independent civil suit. See **Heflin v. United States,** 358 U.S. at 418, n. 7 (1959). The underlying congressional purpose for enacting 28 USC § 2255 was to authorize relief to any person who is denied his or her liberty in violation of the Constitution or laws of the United States. Thus, in suit brought under § 2255, movant can raise any claim that could warrant habeas corpus relief. See **Kaufan v. United States,** 394 U.S. 217, 221-22 (1969).

Movant will not attempt to make § 2255 do service for a direct appeal, to the contrary, movant raises issues grounded upon the fabrics of the Constitution of the United States that every criminally charged defendant who is brought before a court of law under indictment of a felony offense shall be guaranteed the fundamental right to a fair trial and to be represented by competent counsel at every stage of the criminal's proceedings against him, and to counsel who is effective for his defense. See **Strickland v. Washington,** 466 U.S. 688 (1984).

### ISSUES PRESENTED FOR REVIEW

### GROUND ONE

**Whether There Was a Constructive Amendment To The Indictment Where This Court Charged The Jury To Convict, Whether or Not The Defendant knew the Drug of Conviction Was Cocaine In violation Of Ingram's Fifth Amendment Grand Jury Clause**

### GROUND TWO

Whether Ingram Was Denied Effective Assistance Of Counsel Guaranteed Him Under The Sixth Amendment To The United States Constitution

## STATEMENT OF FACTS

On February 4, 2004, Alfonzo Ingram was convicted of Conspiracy to Possess with intent to Distribute more than 5 Kilograms of cocaine in violation of 21 USC §846. This conviction was based upon count one of the indictment which alleged that from early July 2002 through July 12, 2002, Ingram conspired with co-defendant Pierre Dawson, and others known and unknown, to possess with intent to distribute in excess of five kilograms of cocaine. The evidence at trial established that on July 12, 2004, Co-defendant Dawson attempted to purchase cocaine from a confidential informant, Oscar Diaz. Ingram's only involvement was his appearance on July 12, 2002, the day of his arrest. At that time, Ingram arrived, along with co-defendant Dawson, at a Walgreens Store, and then at a garage where Dawson and Diaz had planned to complete their drug transaction.

The Jury acquitted Ingram of Count Two of the indictment. According to the evidence, Count Two charged Ingram with attempted possession of the same kilograms of cocaine alleged in count one based on his presence in Diaz's garage on July 12, 2002, where Dawson was attempting to purchase cocaine. From April 2002, through July 12, 2002, Diaz and Dawson engaged in multiple telephone conversations and in-person meetings for the purpose negotiating a cocaine transaction. Unbeknownst to Dawson, Diaz was a confidential informant who was recording their numerous telephone conversations and meetings. Ingram, however, was never mentioned during the phone calls, nor did he participate in any of Dawson's numerous meetings with Diaz.

On July 12, 2002, the last day of the charged conspiracy, Ingram was arrested at Diaz's garage as Dawson attempted to purchase cocaine from Diaz. Prior to their arrest, Dawson entered into the garage with a suitcase containing approximately $270,000 in U.S. Currency. Once inside the garage, Diaz had no contact with Ingram. Diaz testified at the trial that his deal with Dawson would have happened regardless of whether Ingram was present.

-4-

The government had attempted to video tape the meeting from the garage, but an equipment failure prevented the meeting from being recorded. Dawson and Ingram were arrested when the began to leave the garage. At the at Time, Ingram was in possession of identification in the name of Ronald Thomas, and was driving a vehicle rented under the same name. The jury considered the facts and acquitted Ingram of attempted possession of cocaine in light of these facts.

The Government presented Disz's testimony regarding prior drug transactions pursuant to the intricately related doctrine. Diaz testified that in the late part of 2001, he engaged in 8 to 10 series of drug transaction with Dawson. Diaz could not recall the dates, times or quantities involved in transactions 1 through 9, none of which involved Ingram. During Diaz's debriefing and prior to Ingram's arrest, he did not mention Ingram in any of his transactions with Dawson. However, he testified at trial that Ingram was present on December 23, 2001, in which he supplied Dawson with 283 Kilograms of cocaine.

Pursuant to Rule 404(b), and over Ingram's objection, the government presented Rose Aubrey's testimony. Aubrey was arrested on April 6, 2000 for transporting 90 kilograms of crack cocaine from Dallas, Texas to Memphis Tennessee. She testified at her own trial regarding her fervent belief in Tarot Cards, as well as her belief that white people don't pay taxes. She was convicted by a jury and sentenced to 300 months in the Bureau of Prisons.

Admitting she was a perjurer, Aubrey testified that Rodger Lopez, Dawson's supplier, paid her to make 12 to 20 trips from Dallas to Memphis, although she was not able to recall any of the specific dates of any of her trips. Aubrey testified that Ingram was present all the time to remove the license plate from the car she drove when making these runs from Dallas to Memphis.

She further testified that upon her arrest in April 2000, Dawson, Lopez and Ingram paid for her lawyer. Aubrey never actually saw Ingram pay for her lawyer

or even speak with him, and admitted that she told the agents on prior occasion
that it was Dawson alone who paid for her legal representation.

After Ingram was arrested but prior to trial, Aubrey had met with DEA agents
on February 20, 2003, and gave a detailed interview discussion both Dawson and
Lopez. She acknowledged that she would see Ingram in Memphis. However, in contrast
to her trial testimony, she never told agents that Ingram participated in her
drug deliveries, or that he removed licence plate from the vehicle she drove.
In addition, she stated that she would meet dawson and Ingram at the LaQuinta
Inn upon her arrival in Memphis. In her DEA interview, she told agents that it
was only Dawson she met.

During jury instruction, the district court did not instruct the jury on
the nature of the charge, the "Conspiracy" for which Ingram was on trial. During
deliberation, the jury sent the district court a note with the following question:

> Regarding Count 1, given the wording, can one be separate from the other?
> And given the wording, which indeed, is "Pierre Dawson and Alfonso Ingram
> did conspire. It is difficult to establish a separate verdict given the
> wording.

Although there was some discussion regarding the supplemental instruction
given by this court, counsel for all the parties continued to disagree over the
appropriate response, and this court went off the record telling defendants and
counsel, " I'm just going to give them the straight answer, which is the answer
is clear, 'Yes' so I'm just going to answer that and say 'Yes'"

Not allowing further imput from defense counsel, this court responded to
the jury in writing as follows:

> **"A conspiracy involves an agreement between a defendant and one or
> more other persons. Therefore, it is possible to make an individual
> determination as to each defendant."**

Counsel for Ingram objected to the above instruction as a misstatement
of the law. Counsel argued that the proper  instruction must delete "possible"
and insert "must" as the legal requirement under the Seventh Circuit's Pattern

-6-

Instruction 4.05, the separate consideration instruction. This court refused counsel's request or correct the improper instruction.

At the June 16, 2004, sentencing hearing, counsel for Ingram argued that the Government had not established that the 90 Kilograms of crack cocaine seized from Aubrey, or the 283 kilograms of cocaine allegedly sold by Diaz to Dawson in December 2001, constituted relevant conduct for sentencing purposes. Ingram accepted the probation officer's report which did not include the 90 kilograms of crack or the 283 kilograms of cocaine, as there was no corroboration of Ingram's involvement with these quantities. The probation officer had determined Ingram's base offense level at 34.

In addition to the level 34 determination made by the probation officer, Ingram submitted further impeachment of Aubrey. While Aubrey testified at trial that Ingram was present every time she made a delivery to Memphis, Ingram submitted a hotel record indicating that at the time of Aubrey's arrest, he was in Las Vegas, Nevada. defense counsel further argued that more documentation could have been provided if Aubrey had testified regarding any other specific dates for her other trips to Memphis. Her failure to provide such information, however, made it impossible for Ingram to refute his whereabouts on those occasions.

In addition to the relevant conduct determination, Ingram objected to the assessment of his criminal history. The Presentence Investigation Report added two points to Ingram's criminal history for a conviction received on July 8, 1992, and thus categorized him as criminal history III. The indictment charged a conspiracy that began in early July and ended on July 12, 2002. At trial, no evidence was presented to establish that Ingram was involved in the instant offense prior to July 12, 2002, the day of his arrest. Thus, his conviction fall outside the ten year applicable time period and should not be counted in calculating his criminal history. U.S.S.G. §4A1.2(e)(2). This court determined that because

it intends to consider consider the drug quantities testified by Aubrey and Diaz occurring prior to the time of commission of the offense of conviction, the ten year window for consideration of the 1992, conviction will be satisfied.

Although the government called Aubrey and Diaz to testify for the purpose Rule 404(b), this court did not explain why it would consider the testimony of these individuals as direct evidence in the instant case. Because this court considered quantities derived from the 404(b) evidence, this court raised Ingram's base offense level to 38. This court then sentenced Ingram to 300 months in prison to equate the sentence received by Rose Aubrey.

Ingram appealed to the Seventh Circuit Court of Appeals on grounds different from those raised in this 28 U.S.C. § 2255 motion.

On September 28, 2005, the Seventh Circuit Court of Appeals affirmed in part and remanded in part. On March 17, 2006, the Seventh Circuit affirmed this court's order on the **Paladino** remand. On J nuary 17, 2006, the Seventh Circuit ruled on the Government's motion for rehearing. On May 9, 2006, the Seventh Circuit ruled on Ingram's motion for rehearing. On December 12, 2006, the United States Supreme Court denied certiorari.

This 28 U.S.C. § 2255 motion is timely.

## ARGUMENTS

### GROUND ONE

**Whether This Court Constructively Amended The Indictment Where The
Court Instructed The Jury To Convict If They Find That any Other
Than Cocaine Was Involved and Thereby Violated Ingram's Fifth Amend.
Right To The Constitution Of The United States.**

**Movant, Alfonso Ingram,** contends that his conviction and sentence must be

vacated because the jury instruction allowed the jury to convict on finding of any

illegal drug trafficking rather than a finding of a particular drug, "Cocaine"

as charged in the indictment. "[A] constructive amendment occurs where proof

at trial goes beyond the parameters of the indictment in that it establishes

offenses different from or in addition to those charged by the Grand Jury. Such

error.. which in a jury trial can also be generated or exacerbated by faulty

instructions, violates the Fifth Amendment since the Grand Jury Clause limits

the available basis for conviction to those contained in the indictment." See

**United States v. Pigee,** 179 F.3d 879, 886 (7th Cir. 1999). A constructive amendment

can be made either through the evidence or through the jury instructions. See

**Stirone V. United States,** 361 U.S. 212, 215-16, 80 S. Ct. 270, 4 L.Ed.2d 252

(1960). In **Stirone,** the defendant was indicted for obstructing interstate shipment

of sand, but at trial, the government also proffered evidence that the defendant

had obstructed steel shipments. The jury was instructed that it could convict

based on either sand or steel. The supreme court held that the indictment had

been amended by the addition of the obstruction of steel language in the jury

instructions and reversed the conviction.

In the instant case, the indictment charged that "Beginning no later than

early July 2002, and continuing until on or about July 12, 2002,...Pierre Dawson

and Alfonzo Ingram did conspire....knowingly to possess with intent to distribute

and to distribute in excess of five(5) kilograms of a mixture containing a controlled

substance, namely cocaine,....in violation of 21 U.S.C. § 846. The indictment here, was not drawn in general terms but made cocaine the element of the offense. ("namely cocaine")The indictment further stated that the offense commenced in July 2002, and ended on July 12, 2002.

During trial, this court allowed the government to present evidence through two testifying government witnesses. Rose Aubrey testified that Ingram was present when she delivered drugs to Memphis, Tennessee before her arrest in 2000. Oscar Diaz testified that Ingram was present on December 23, 2001, when he supplied Dawson with 283 kilograms of cocaine.

During jury instruction, this court instructed the jury on the nature of the offenses and what the government must prove to convict the defendants. However, this court instructed the jury that "It does not matter whether the defendant knew the substance was cocaine. It is sufficient that the defendant knew that it was some kind of prohibited drug." (Trial Tr. at 1194)

The general rule of prosecution is that allegations and proof in an indictment, must correspond. This is based upon the requirement that (1)the accused shall be definitely informed of the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; (2)that he may be protected against another prosecution for the same offense.

In the instant case, by specifically alleging that Ingram conspired to possess with intent to distribute "namely cocaine," the government made cocaine an element of the charge. See **Losey v. Frank,** 268 F. Supp. 2d 1066, 1072 (E.D. Wis. 2003). Having made cocaine an element of the offense, the Government could not have convicted Ingram of conspiracy to possess with intent to distribute "cocaine" by proving at trial that "crack" was involved in the offense. See **Stiron,** supra. Yet, Rose Aubrey testified to the seizure of 90 kilograms of "Crack" upon her arrest on April 6, 2000, for which this court sentenced Ingram.

-10-

In **United States v. Leichtnam,** 948 F.2d 370, 379-81 (7th Cir. 1991), the Seventh Circuit held that a charge was improperly amended where the government charged use and possession of a firearm, "to wit a Mossberg rifle," but at trial adduced proof  of  the   Mossberg rifle along with two other weapons. The court found that the government's proof impermissibly broadened the indictment and violated the defendant's rights.  Similarly, in **United States v. Willoughby,** 27 F.3d 263, 266 (7th Cir. 1994), the court held that it was improper for the government to charge the defendant with using and carrying a firearm in relation to drug trafficking crime, "to wit: the distribution of cocaine," and then proved that he used or carried the weapon in connection with the offense of possession with intent to distribute.

Here, the government made "cocaine" an element of the offense. By introducing cocaine and "Crack," two distinct drugs under the law, the government failed to prove that Ingram conspired to possess with intent to distribute, "namely cocaine" as charged.

The government's impermissible expansion of the indictment was further boosted where at the jury instruction, this court instructed the jury that, "It does not matter whether the defendant knew that the substance was cocaine. It is sufficient that the defendant knew it was some kind of prohibited drug."

B.                          **Proof of Different Operative Facts**

Ingram's Fifth amendment rights were further violated where the government charged a single set of facts in the indictment but adduced evidence of different operative facts. The indictment charged that the conspiracy commenced not later than early part of July, 2002, and ended on July 12, 2002. The conspirators were Alfonzo Ingram and Pierre Dawson. Of course, Oscar Diaz, being a paid government informant prior to July, 2002, cannot be a co-conspirator.

-11-

Nevertheless, at trial, the government presented testimony from Oscar Diaz and Rose Aubrey. The Government stated that Rose Aubrey dealt with the two defendants on trial and that Aubrey's testimony would be a Rule 404(b) evidence. However, prior to Rose Aubrey's testimony, the jury was not cautioned as to what purpose for which the testimony is being offered. Oscar Diaz testified in the same manner.

Ingram contends that cautionary instruction prior to Aubrey's testimony was crucial since Aubrey was testifying to offense involving "crack," which was not the offense for which Ingram was on trial. See **United States v. Whitlow,** 381 F.3d 679, 686 (7th Cir. 2004). Aubrey testified to activities occurring 2 years prior to the offense for which Ingram was on trial. While this court gave a general jury instruction concerning admission of evidence of acts of Ingram and Dawson which were not charged and the limited purpose which they should be considered, the court did not instruct the jury that evidence of "crack" could not be considered because the defendant was not on trial for "crack" conspiracy.

Indeed, not only that this court did not instruct the jury on the inadmissibility of "crack" testimony, this court considered Rose Aubrey's testimony as a direct evidence of the offense and sentenced Ingram accordingly. In sum, Ingram was not aware of the "core of criminality" which was to be proven at his trial.

Furthermore, it was only the probation office which tried in vain to prevent both this court and the government from violating Ingram's Fifth amendment rights under the Grand Jury Clause. The probation officer refused to consider Rose Aubrey's "crack" testimony as a direct evidence of the instant offense. However, this court overruled the probation officer, added the 90 kilograms of crack testified by Rose Aubrey in what was supposed to be a Rule 404(b) evidence, to Ingram's calculated offense level 34. This court then raised the offense level to 38 and sentenced Ingram accordingly. Indeed, Oscar Diaz's 283 kilograms of cocaine offered as a Rule 404(b) evidence, was also considered as a direct evidence of the instant offense.

-12-

Ingram asserts that based on this court's charge that the jury could convict regardless of which illegal controlled substance was involved coupled with the prosection's evidence, introducing "crack" evidence, whether to prove plan, knowledge and intent in a "namely cocaine" indictment, the indictment was constructively amended. The judgement of conviction and sentence must be vacated in its entirety.

GROUND TWO

THAT ALFONZO INGRAM IS ENTITLED TO A NEW TRIAL
BASED UPON HIS FAILURE TO RECEIVE THE EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION

Movant, Ingram, was represented at trial by Ms. Susan M. Pavlow. His appellate counsel was Mr. Steven J. Weinberg. Despite the filing of pre-trial motions, a direct appeal and appearances of counsels at trial, Ingram did not receive the effective assistance of counsel as required under the Sixth Amendment to the Constitution. The record of the underlying case is replete with the instances of ineffective assistance most significant of which are:

(a).    The failure of counsel to object when the government witness testified to drug transactions involving "crack" where the indictment limited the theory of prosecution to cocaine only.

(b).    The failure of defense counsel to object or question the propriety of calculating drug amount obtained from a 404(b) evidence to set Ingram's base offense level.

(c).    The failure of defense counsel to object when the court instructed the jury that defendants do not have to know that they were conspiring to possess cocaine. That it is sufficient if they know that it was some kind of prohibited drug.

-13-

(d).   The failure of appellate counsel to appeal the use of 404(b) evidence as a direct evidence for sentencing Ingram;    the improper jury instructions.


**A. The Failure of Counsel to Object when the Government Witness Testified To a conspiracy involving "crack."**

Th Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have assistance of counsel for his defense. **U.S. Const. Amend. VI.** This right has come to be regarded as **sine qua non** of the U.S. criminal justice system. The Sixth Amendment stands as a constant admonition that "if the constitutional safeguards it provides be lost, justice will not still be done." In **Powell v. Alabama,** 287 U.S. 45, 69, 53 S. Ct. 77 L.Ed. 158 (1932), Justice Sutherland described the importance of these rights, that even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with a crime he is incapable, generally of determining for himself whether the indictment is good or bad, he requires the guiding hand of counsel at every step of the proceedings against him."

The right to counsel guaranteed by the Constitution however, means more than just the opportunity to be physically accompanied by a person privileged to practice law. **Strickland v. Washington,** 466 U.S. 688 (1984)(that a person who happens to be a lawyer is present alongside the accused...is not enough to satisfy the constitutional command).

In the instant case, the indictment charged, along with the substantive count, a conspiracy to possess with intent to distribute "namely cocaine" in violation of 21 USC §846. As the Seventh Circuit held in **United States v. Pigee,** 197 F.3d 879, 889 (7th Cir. 1999),    the    failure of the trial judge to give limiting instruction or cautionary paragraph with count 7 and the government introduced some evidence at trial that the defendant  distributed cocaine...."distributing

-14-

was not alleged in Count 7 of the indictment. In effect, the trial court's instruction broadened the possible bases for Lipscomb to be convicted under Count 7 to include manufacturing, distributing or using.

At the trial of Ingram, the government called two witnesses, Rose Aubrey and Oscar Diaz to testify. The government stated that these witnesses would testify pursuant to Federal Rules of Evidence 404(b) to prove that Ingram, in particular, had the intent, knowledge and the same method to commit the offense charged in the indictment. (Trial Tr. at 803) As Ingram stated earlier, the legal effect of the words, "namely cocaine," makes cocaine an essential element of the offense. **Willoughby,** 27 F.3d at 266-67. However, Rose Aubrey testified to transportation of "crack," to Memphis, Tennessee from Dallas, Texas, a drug quite different from the drug charged in the indictment. Thus, not put to adversarial test, the government presented evidence to the jury that Ingram, "in particular," had the intent, the knowledge and method to conspire to possess with intent to distribute "crack" which he is not on trial.

Counsel for Ingram challenged Rose Aubrey's testimony on the grounds that she was an admitted perjurer, that her drug trafficking was not similar enough nor close enough to the July 12, 2002, Conspiracy charged in count One of the indictment. Counsel failed to challenge the testimony on the reasons for which the government offered them. That is, to prove intent, knowledge and method. Because intent and knowledge are crucial elements of the offense of Conspiracy, the government could not have convicted Ingram of Conspiracy to possess with intent to distribute "namely cocaine" by proving at trial that he conspired to possess with intent to distribute "crack." The government's evidence on the "namely cocaine" conspiracy charge was, therefore, legally insufficient because the government failed to prove essential elements of the offense, i.e., that Ingram had the intent and knowledge to commit the offense.

The right to have assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. See **Holloway v. Arkansas,** 435 U.S. 475, 98 S. Ct. 1173, 55 L.Ed.2d 426 (1978).

In **Strickland,** supra, the supreme court basically reviewed like circumstances and came to the conclusion that a two prong test for effective assistance of counsel require a showing that but for the ineffective assistance of counsel there was a reasonable probability of a different result with effective assistance. The court held, thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the fact of the particular case, viewed as of the time of counsel's conduct...the court must then determine whether in light of the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. In making the determination, the court should keep in mind that counsel's function, as to elaborated in professional morms, is to make the adversarial process work in the particular case.

In the instant case, counsel made a joke of the adversarial system. It does not strain the imagination of a reasonable person that counsel's duty involves requiring that all available defense are raised so that the government is put to its proof. The most able and competent lawyer in the world cannot render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn the readily available facts which might have afforded his client a legitimate justiciable defense. See **Goodwin v. Swansen,** 287 F.Supp. 166, 182-83 (W.D. Mo. 1968).

The failure of Ingram's counsel to object on the grounds raised above warrant reversal of his conviction for a new trial.

-16-

**(B).**    **The Failure of Defense Counsel to Object or Question The
Propriety of Calculating Drug Amount Obtained from a 404(b)
Evidence when Setting Ingram's Base Offense Level**

Ingram asserts that his defense counsel rendered assistance which fell

below an objective standard of reasonableness where counsel failed to raise

objection to calculation of his base offense level based upon evidence obtained

through Federal Rules of Evidence 404(b). At the trial, this court questioned

the purpose for the testimony of both Rose Aubrey and Oscar Diaz. The government

stated that they are offered to prove intent, knowledge and the method of

operation of the individuals on trial. Specifically, the government stated

that the testimony is offered to prove that "defendant Ingram in particular,"

was not acting... (Trial Tr. at 803)

At the trial, this court failed to give the jury a limiting instruction

at the time of the testimony. However, this court gave a cursory instruction

of the use of evidence of uncharged acts of Ingram and Dawson at the final

jury instruction.

At the sentencing hearing, the probation officer calculated Ingram's

base offense level without considering the drug amount testified by Rose Aubrey,

under 404(b) rule. It is unfathomable why this court rejected the probation

officer's exclusion of the 404(b) evidence, gave a final jury instruction

as to the limited purpose of the evidence, and turned around and used the

evidence as a direct evidence to determine Ingram's sentence.

This court made such a fatal snafu while defense counsel stood still.

In **Ferri v. Ackerman,** 444 U.S. 193, 204, 100 S. Ct. 402, 409, 62 L.Ed.2d 355

(1979), the supreme court held that "indispensable element of the effective

performance of defense counsel's responsibilities is the ability to act inde-

pendently of the government and to oppose it in adversary litigation."

-17-

Ingram argues that had defense counsel objected and reminded this court, that such evidence cannot be considered in calculating his sentence, he would have been sentenced upon the probation officer's proper calculation at level 34 of the offense guidelines. A sentence based on level 38 is far greater than the sentence Ingram faced if this court had sentenced on the properly calculated offense level 34. There is no question that counsel's failure to object here, prejudiced Ingram because there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. See **Lawrenec v. Lockhart,** 767 F.2d 449, 450 (8th Cir. 1985); **Strickland,** 466 U.S. at 694, 104 S. Ct. at 2068.

Based on this, Ingram's sentence must be vacated for resentencing.

**(C).      Failure of Counsel to Object when This Court Instructed
The Jury That The Defendants Do Not Have Know That They
Were Conspiring To Possess Cocaine.**

Trial counsel rendered ineffective assistance where counsel failed to object to this court's erroneous instruction to the jury. One of the crucial elements the government must prove to convict Ingram, is that he knew he was conspiring to possess with intent to distribute cocaine. This is so, because by drafting the indictment as it did, the government made cocaine an element of the charged offense.

During the final jury instruction, this court instructed the jury that it does not matter whether the defendant knew that the substance was cocaine. It is sufficient that the defendant knew that it was some kind of prohibited drug. This instruction removed from the jury, the duty of considering whether the government has proven beyond a reasonable doubt that Mr. Ingram knew he was conspiring to possess cocaine as charged in the indictment. Therefore, knowledge of cocaine was highly probative of one of the elements of the offense. See **United States v. Whitlow,** 381 F.3d 687, 688 (7th Cir. 2004).

-18-

Ingram argues that his defense counsel's inability to note from the beginning, that the indictment was a specific indictment, caused the spillover effect that affected counsel's performance throughout the proceedings. The failure to object to the erroneous instruction amounts to incompetency on the part of counsel. In **United States v. Kindred,** 931 F.2d 315 (9th Cir. 1991), the court held that it was error in the trial of possession of a Machine gun to instruct the jury that the defendant only had to know it was a gun. The equivalence of that, in the instant case, is that the jury must convict so long as it believes that some kind of prohibited drug is involved in the case.

Defense counsel could    not be functioning as the effective counsel guaranteed Ingram when he stood by as Ingram's affirmative defense, "knowledge" which the government must prove, was removed from jury consideration. Based on that, Ingram's conviction and sentence must be vacated.

**(D).**        **·The Failure of Appellate Counsel to Appeal the Use of 404(b) Evidence As a Direct Evidence To Sentence Ingram And The Failure to Appeal the Improper Jury Instruction**

Ingram further contends that his appellate counsel rendered deficient performance in failing to raise appealable issues. In **Penson v. Ohio,** 488 U.S. 75, 109 S. Ct. 346, 102 L.Ed.2d 300 (1988), the supreme court distinguished between two types of ineffective    appellate counsel. First, when the deficiency consists of failure to raise or properly argue certain issues on appeal and second, when there has been actual or constructive denial of any assistance of appellate counsel.

The first type of case(the primary thrust of Ingram's claim here,) requires a showing of the **Strickland** prejudice. As already exhausted in other issues, the record of the instant case shows that this court erroneously considered the drug amount testified by Rose Aubrey pursuant to Rule 404(b) when she

sentence Ingram. As noted by the Seventh Circuit, "evidence of other crimes and wrong, may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. See **United States v. Moore,** 115 F.3d 1348 1354 (7th Cir. 1997).

One of the duties of an appellate counsel is to review the trial records and marshal out appealable issues. It cannot be said that appellate counsel performed that duty effectively here. A competent counsel who reviewed the trial record of client such as Ingram would have found that Ingram's sentence was illegal because this court considered evidence admitted for limited purpose when she sentenced Ingram.

For this, Ingram's sentence must be vacated for resentencing.

The United States supreme court has explicitly noted that both deficient performance and prejudice must be shown in other to prove constitutionally ineffective assistance  of counsel. If either element is missing, the petitioner cannot prevail. **Strickland,** 466 U.S. at 697, 104 S. Ct. 2052.

Considering the evidence in the record of Ingram's trial and as pointed out in the various issues in this 28 USC §2255 motion, it cannot be said that Mr. Ingram was not prejudiced by the performance of both his trial and appellate counsels. Counsel's deficient performance caused the admission of Rose Aubrey's "crack" testimony from which the jury probated the element of "intent" and "knowledge," yet, Ingram was not on trial for "crack" conspiracy. Counsel failed to object when this court considered drug quantity from Rose Aubrey's testimony which was not offered as a direct evidence in the instant case. Had counsel objected, this court would not have included such drug type and amount in a "cocaine only" conviction. Because this court instructed the jury that the defendants do not have to know that they were conspiring to possess with intent to distribute cocaine, the jury was barred from considering a crucial element of the offense resulting to a directed verdict. Had defense

-20-

counsel objected and reminded this court that the indictment made "cocaine"
an element of the charged offense, such instruction would not have been given.
Finally, had appellate counsel appealed the use of "crack" derived from a
404(b) evidence to sentence Ingram, the appellate court would have  remanded
for a resentencing.

Ingram believes he has adequately identified the acts and omissions
of his counsels and believes that this court, has palpable reasons to determine
that the acts and omissions were outside the wide range of professional competent
assistance as required under **Strickland.** Thus, Ingram concurs with the district
court which in granting a habeas corpus, stated that "the lawyer who does
not probe, does not inquire and does not seek out all the facts relevant to
his client's case is prepared to do little more than stand still at the trial.
See **Smutherman v. Beto,** 276 F.Supp. 579, 588 (N.D. TX 1967).

Clearly, Ingram's § 2255 motion falls within the parameters of each of
the authorities cited, each of which support the fact that he was totally
deprived of effective representation at his trial and appeal. The matters
set forth in this motion meet the test of ineffective assistance of counsel
as adopted by the Seventh Circuit in **Strickland,** supra.

The matters within and without the record of this case clearly demonstrate
that counsel's performance when placed in the balance of the entire record,
can only be led to the conclusion that his failures were grossly disproportionate
to the positive aspects of his representations.

For all of the reasons and authorities set forth hereinabove, ALFONZO
INGRAM's request for a new trial, resentencing or dismissal pursuant to 28
U.S.C. § 2255 should be granted.

Respectfully submitted,

ALFONZO INGRAM, Pro se

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing 28 U.S.C. § 2255 motion has on this the 6th Day of December, 2007, been sent to the Assistant U.S. Attorney, George Jackson III, 219 South Dearborn Street, 5th Floor, Chicago, Illinois 60604

Alfonzo Ingram
Reg. No.20864-424
FCI-Seagoville
P.O. BOX 9000
Seagoville, TX 75159