FILED
MAR 17 2008
3-17-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA     *
    Plaintiff/Respondent,     *
                                 *
vs.     *   Criminal: No. 1:07-CV-06955
                                 *
ALFONZO INGRAM     *
    Defendant/Movant.     *

## INGRAM'S TRAVERSE RESPONSE TO THE GOVERNMENT'S OPPOSING RESPONSE TO HIS 28 U.S.C. § 2255 MOTION

**COMES NOW, ALFONZO INGRAM**, hereinafter, "Ingram," appearing on his own behalf and files this reply to the government's response to his motion pursuant to 28 U.S.C. § 2255. As grounds, Ingram states as follows to the court:

As Ingram stated in his motion, under Title 28 U.S.C. § 2255, an individual sentenced by a federal court may attack the sentence imposed by claiming one of four different grounds: (1) that the sentence was imposed in violation of the constitution or law of the United States (2) that the court was without jurisdiction to impose such sentence (3) that the sentence was in excess of the maximum authorized by law (4) that the sentence is otherwise subject to collateral attack. **Hill v. United States,** 368 U.S. at 426-27.

A.            CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

Ingram argued that a constructive amendment of the indictment occurred because a crucial element of the offense was taken out of the province of the jury. The instruction given to the jury, Ingram asserted, irretrievably left the jury to convict him without consideration of the element in question.

The government, demonstrating a deficit of contrary argument, conjectured that the argument was about introduction of 404(b) testimony about crack. The government is wrong.

Cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and are in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a complete "miscarriage of justice." Of course, a constitutional issue *may* not be raised for the first time on collateral review without a showing of both 'cause' for the procedural default, and actual 'prejudice' resulting from the error

However, even if a defendant cannot establish "cause" and "prejudice," pursuant to the narrow exception, a defendant may be entitled to relief under 28 U.S.C. §2255 if the error of constitutional nature would result in a "complete miscarriage of justice." See **Murray v. Carrier,** 106 S.Ct. 2639, 2649(1986); **Bousley v United States,** 118 S. Ct. 1604, 1610 (1998). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. Where the jury did not get to determine a crucial element of the charge against Ingram, he has established actual innocence.

Since the government has demonstrated a contumacious disregard for the truth about the issue raised by Ingram, this court, again, is reminded that the issue is whether an indictment, which charged a specific drug as element of the offense, can be expanded by jury instruction as a "general indictment?" The government has failed to shoulder the burden of persuasion but instead, corrupted the issue for its advantage.

Presented for this court's ruling is whether the indictment here which specifically made cocaine an element of the offense,"**namely cocaine,**" should have received a jury instruction limiting the jury to convict defendant of only cocaine, and not, as instructed, to convict if they find that "...defendant knew it was some kind of prohibited drug." (Trial Tr. at 1194) The government's response is conspicuously devoid of any any answer to this question. No doubt the government wants to turn the issue of such a "gross miscarriage of justice" to procedural error.

-2-

Finally, the government argued that "even if the indictment had alleged cocaine, and the proof was of possession of cocaine base, that would not be a constructive amendment of the indictment." (Government's response at 8). To back such a proposition, the government cited **United States v. Rutherford,** 175 F.3d 899, 906 (11th Cir. 1999), and **United States v. Gougis,** 432 F.3d 735, 745 (7th Cir. 2005)(nature of controlled substance not an element).

These cases are distinguishable from the case at bar. First, neither **Rutherford,** nor **Gougis,** charged a specific type of controlled substance as element of the offense. Of course, Ingram admits that statutes do not make drug amount and type, elements of the offense. **United States v. Martinez,** 301 F.3d 860, 865(7th Cir. 2002). However, where the charging instrument makes the drug type an element of the offense, as in the case at bar, the theory of conviction cannot be advanced on a different type of drug. Doing so constitutes an impermissible amendment of the indictment. See **United States v. Leichtnam,** 948 F2d 370,379-81(7th Cir. 1991) (charge was improperly amended where the government charged use and possession of firearm, "to wit: a mossberg rifle," but at trial, adduced proof of the mossberg rifle along with two other weapons); **United States v. Willoughby,** 27 F.3d 263, 266 (7th Cir. 1994)(it was improper for the government to charge the defendant with using and carrying a firearm in relation to drug trafficking crime, "to wit: the distribution of cocaine," and then proved that he used or carried the firearm in connection with the offense of possession with intent to distribute).

In the case at bar, the government charged a conspiracy to possess with intent to distribute , "namely cocaine." See Attachment A.  The legal dictionary definition of "to wit" is "namely." The government's argument therefore, that drug type is not an element of the offense, is completely misplaced. The government could have drafted the indictment in general term but it did not do so here.

There is no question that the indictment here was constructively amended and that Ingram was prejudiced by the amendment. Indeed, the prejudice spilled over to Ingram's sentence where this court considered the 404(b) evidence as a direct evidence and sentenced Ingram accordingly.

The government has failed to shoulder the burden of persuasion warranting this court to vacate Ingram's sentence.

### PROOF OF DIFFERENT OPERATIVE FACTS

B.   At no time, contrary to the government's response, did Ingram argue that the presence of 404(b) evidence constructively amended his indictment. In his 28 USC § 2255 motion, Ingram argued that introduction of crack cocaine, as a 404(b) evidence in a cocaine only trial, denied Ingram any knowledge of the "core of criminality" which was to be proven at trial. In essence, the government's reliance on cases such as <u>United States v. Kreiser,</u> 15 F.3d 635, 641 (7th Cir. 1994), is to no avail.

However, the issue at bar is whether the government charged a single set of facts in the indictment but adduced evidence of different operative facts. The Fifth Amendment to the United States Constitution will be rendered meaningless, if the government is allowed to charge in an indictment that, the offense was "cocaine only," that the crime commenced not later than early part of July, 2002, and ended on July 12, 2002, but asked this court to sentence Ingram for a crime committed prior to Rose Aubrey's arrest in 2000, involving a different type of drug, crack cocaine.

Even if the government argues that the evidence of Rose Aubrey's crack cocaine trafficking offense prior to her arrest in 2000, was a proper 404(b) evidence to prove intent, knowledge or motive to commit the powder cocaine offense 2 years later, the government cannot explain why it argued in its response, that Rose Aubrey's testimony was a relevant conduct for which this court is allowed to

consider in calculating Ingram's sentence.

Furthermore, Ingram argued that the jury was only given a general instruction where the indictment was one for a specifict type of drug. There was no cautionary instruction to the jury regarding crack cocaine, how it could have been directed toward establishing a matter in issue; how crack trafficking was similar to powder cocaine conspiracy that took place two years after Rose Aubrey went to prison; How the jury could have relied on crack cocaine to convict Ingram of powder cocaine conspiracy and why the introduction of crack cocaine is not substantially outweighed by the danger of unfair prejudice. **United States v. Price,** 418 F.3d 771, 783-84 (7th Cir. 2005); **United States v. Selbolt,** 460 F.3d 910, 916 (7th Cir. 2007). As stated above, crack cocaine was not a part of the offense of conviction and the jury should have received a specific cautionary instruction on that.

The most egregious, and perhaps the rankest of "gross miscarriage of justice," is that this court, at Ingram's sentencing hearing, overruled the probation officer's drug quantity determination, included 90 kilograms of crack introduced as a 404(b) evidence and sentenced Ingram as though the 90 kilograms were a direct evidence of the offense of conviction.

### INEFFECTIVE ASSISTANCE OF COUNSEL

The government used a vast portion of its response to incant the procedures this court must adopt and what the defendant must prove or argue in order to challenge the performance of his defense counsel.

The government's lamentation about the procedure governing ineffective of counsel challenge, was adequately addressed in Ingram's § 2255 motion.

First, Ingram specifically argued that his defense counsel rendered ineffective assistance where counsel failed to specifically object to Aubrey's crack cocaine testimony as a proper 404(b) evidence. The government's response characterized the argument as one challenging failure to object enough. (Government's response at 8).

-5-

The government further responded that defense counsel objected to the introduction of the 404(b) evidence in "general" on several grounds, but counsel's argument was rejected by this court. While the government noted that Ingram specifically challenged counsel's performance on the ground of not lodging a specific objection to introduction of crack cocaine, the government maintained that since Ingram adopted Dawson's appellate brief which challenged the issue on appeal, affirmance of the conviction and sentence by the Seventh Circuit, forecloses the issue. The government is wrong. Ingram's contention relates to what counsel did in the district court and not limited to the appeals court. Moreover, this court's overrule of what the government refers to as "general" objection by defense counsel, does not translate to the same thing as overruling a "specific" objection. Had defense counsel specifically objected to the introduction of crack cocaine testimony to prove intent, knowledge or motive to commit powder cocaine offense, the result or ruling of this court would have been different.

Ingram urges this court to reject the government's response and citation of **United States v. Smith**, No. 07 C46, 2007 Wl 4292799, (N.D. Ill. Dec. 4, 2007), as inapplicable to the case at bar. In **Smith**, the evidence showed that defense counsel objected at the district court level and evidence was, in any event, admissible.

In the instant case, counsel failed to object and evidence of crack cocaine was not, in any event, admissible. The government cannot charge, "namely cocaine," in an indictment and admit crack cocaine evidence to prove that defendant had the intent and knowledge to commit the offense.

The government has failed to carry the burden of persuasion warranting vacatur of Ingram's sentence and conviction.

(B)                   <u>FAILURE TO OBJECT TO THE USE OF 404(b) EVIDENCE
TO CALCULATE INGRAM'S GUIDELINE OFFENSE LEVEL</u>

For the first time, the government changes course and argues now that Rose Aubrey's testimony which came in as a 404(b) evidence, is in fact, a relevant conduct. (Government's response at 9).

Prior to introduction of Rose Aubrey's testimony, this court questioned government's counsel as to the purpose of the testimony. The government answered: "To show the intent, the knowledge, that they were not acting by mistake, that defendant Ingram in particular was not acting--" See Attachment B.

The government now argues that this court considered the 404(b) evidence as a direct evidence instead of the purpose for which the evidence was introduced. This explains why the court failed to give the jury a specific instruction as to the purpose of the crack cocaine testimony. The government cannot have it both ways. It cannot argue that there was no constructive amendment of the indictment since Rose Aubrey's testimony, even though a different type of drug, was only a 404(b) evidence, and at the sentencing hearing, urged the evidence to be considered as a direct evidence of the case at bar.

This court is urged to review the government's response very carefully because it is rife with instances of violation of Ingram's fifth amendment right to the constitution. It is remotely impossible, contrary to the government's claim, that the Seventh Circuit Court of Appeals affirmed a decision which modified a 404(b) evidence as a direct evidence for sentencing purposes. Should the court adopt the government's position here, it should also allow Ingram to take the issue to the Seventh Circuit.

Nevertheless, it was a reversible error to sentence a defendant on the basis of evidence introduced only for the purpose of proving intent, knowledge and lack of mistake. Defense counsel's failure to object to this constitutional violation, constitutes a prejudicial ineffective assistance of counsel in violation of defendant's Sixth Amendment rights.

(C).     **Failure of Defense Counsel to Object Where This Court Did Not Instruct The Jury that Proof of Knowledge of The Specific Drug, As Charged In The Indictment Was Required**

It is quite apparent, from the government's response, that the government either failed to review its charging instrument or labors under the presumption that the court is always on the government's side, regardless of level of error.

As the government correctly pointed out, this issue was raised in the main body of Ingram's §2255 motion. However, the government continues to argue torturously that it can draft an indictment on a "specific" theory and offer the jury a different theory for conviction. To support its position, the government offered cases such as **United States v. Gougis,** 432 F.3d at 745(7th Cir. 2005)(nature of controlled substance not an element) quoting **United States v. Martinez,** 301 F.3d 860, 865 (7th Cir. 2002).

Again, these cases are distinguishable. The instant indictment is a specific indictment which charged drug type as an element of the offense. To argue that knowledge of the drug which was charged as element of the offense is not within the province of the fact finder, and that the defendant is not required to know of that element of the offense, renders the conviction void.

This case is permeated with violations of the constitution, especially, the fifth amendment Grand jury clause as well as the Sixth Amendment guarantee of effective assistance of counsel.

(D).     **Failure of Counsel To Appeal The Issues**

The government's response to this contention is that failure to raise a losing argument is not ineffective assistance of counsel.

Ingram argues that unless in bad faith, there is no method by which the government determines a losing argument. The record clearly demonstrates that this court considered evidence introduced under Fed. R. Evid. 404(b) to prove intent and knowledge, as direct evidence when it sentenced Ingram. Such a failure falls

under the requirements of **Strickland v. Washington,** 466 U.S. 668 (1984), two prong test of ineffective assistance of counsel. The government's quest to "win" by any means necessary, should not be elevated over the need for justice to prevail.

Ingram believes that the failure of appellate counsel to raise this matter before the Seventh Circuit, constitutes prejudicial ineffective assistance of counsel. Ingram's sentence and conviction must be vacated.

## CONCLUSION

For the foregoing reasons, Ingram's motion should be granted. The government failed to carry the burden of persuasion, and in fact, restated all of Ingram's arguments in order to obfuscate his issues.

Respectfully submitted,

/s/ Alfonzo Ingram
Alfonzo Ingram
Reg. No. 20864-424
FCI-Seagoville
P.O. BOX 9000
Seagoville, Texas 75159

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Ingram's reply has on this the 10th Day of March, 2008, been sent to the Assistant U.S. Attorney, Mr. Barry A. Miller, 219 S. Dearborn Street, 5th Floor, Chicago, Illinois 60604, by placing same in the institution's legal mail-box Postage prepaid.

/s/ Alfonzo Ingram
Alfonzo Ingram



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

NOV 1 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| v. | ) | 02 CR 688 |
| | ) | Violations: Title 18, United States |
| PIERRE DAWSON, also known as "P.I.," | ) | Code, Section 2, and Title 21, |
| and ALFONZO INGRAM, | ) | United States Code, Sections 846 and 853 |

DOCKETED NOV 2 0 2002

JUDGE

MAGISTRATE JUDGE BROWN

## COUNT ONE

The SPECIAL FEBRUARY 2002-1 GRAND JURY charges:

Beginning no later than early July 2002 and continuing until on or about July 12, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

PIERRE DAWSON, also known as "P.I.,"
and ALFONZO INGRAM,

defendants herein, did conspire with each other, and with others known and unknown to the Grand Jury, knowingly to possess with intent to distribute and to distribute in excess of five (5) kilograms of mixtures containing a controlled substance, namely cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

All in violation of Title 21, United States Code, Section 846.

1

## COUNT TWO

The SPECIAL FEBRUARY 2002-1 GRAND JURY further charges:

On or about July 12, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

PIERRE DAWSON, also known as "P.I.,"
and ALFONZO INGRAM,

defendants herein, did knowingly and intentionally attempt to possess with the intent to distribute in excess of five (5) kilograms of mixtures containing a controlled substance, namely, cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.



```
 1              MR. JACKSON:  To show the intent, the knowledge, and
 2    the method of operation of these two individuals, that they
 3    were not acting by mistake, that defendant Ingram in particular
 4    was not acting --
 5              THE COURT:  Yes, I understand that.
 6              MR. JACKSON:  So the issue of Tarot card reading is
 7    wholly unrelated.
 8              THE COURT:  It would seem that way to me, too.
 9              MR. DURKIN:  Judge, let me just again, she talks
10    early on about doing deals with this person Marquez, Richard
11    Marquez who she was doing readings for, and she went along in
12    the van on some particular trips, and she said she was doing
13    readings, they picked up people at an airport, she read for
14    another guy, readings were anywhere from an hour and a half.
15              "Do you know what happened to the van?
16              "No.
17              "Do you know where the van went?  Do you know?
18              "No.
19              "Now, did you make any money on that trip other than
20    the reading?
21              "No, I made the money with the readings and the tips,
22    but that was it."
23              Now, I think that --
24              THE COURT:  Well, maybe I'll listen to her direct
25    testimony and then see.
```